IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jon E. Smith, et al.,

Plaintiffs,

-vs-

Island Coast International Adoption, Chartered, Inc.,

Defendant.

Case No. 3:06 CV 1283

MEMORANDUM OPINION AND ORDER

JUDGE JACK ZOUHARY

Plaintiffs, Jon and Trisha Smith, bring this lawsuit following their unsuccessful adoption of twins from India. After several years of waiting for the adoption process to be completed and paying more than $20,000 to Defendant Island Coast International Adoption (ICIA) and other agencies, Plaintiffs still did not have their children. Plaintiffs instituted this action seeking damages for breach of contract, fraud, and intentional infliction of emotional distress. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (diversity of citizenship).

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 57). Plaintiffs filed an Opposition (Doc. No. 66) and Defendant replied (Doc. No. 67).

## BACKGROUND

In early 2004, Plaintiffs learned of twins available for adoption in India and contacted Defendant. Defendant then coordinated with International Families, Inc. (IFI), Defendant's affiliated agency, licensed to perform adoptions in India. On March 14, 2004, Plaintiffs and Defendant signed a contract to proceed with the adoption process. Plaintiffs paid three installments to Defendant totaling $3,750. Plaintiffs also paid Defendant a "country fee" of $20,500 which was forwarded to

IFI. This fee covers the services performed by IFI and is used for governmental and attorney costs in India.

Defendant, with the assistance of IFI, located twins in Peace Home, an Indian adoption agency. Peace Home was licensed by the Central Adoption Resource Agency (CARA), the Indian agency that oversees international adoptions. However, in June 2004, Peace Home's international adoption license expired. Although IFI had already applied to CARA for renewal, the license was not immediately renewed. In March 2005, Peace Home's license was finally renewed, but was back-dated to June 2004 and, because the license is only valid for one year, expired again in June 2005. IFI was unable to process Plaintiffs' adoption by June, and was unable to again renew Peace Home's license.

Throughout 2004 and 2005, ICIA provided Plaintiffs, via email and telephone, with reports and updates on the progress of the license renewal. In early 2006, Plaintiffs were dissatisfied with the delays and expressed their concerns to ICIA. Defendant offered to switch the current adoption program to another country or give a partial refund of the $3,750 that was paid to ICIA, but Plaintiffs declined.

**SUMMARY JUDGMENT STANDARD**

Pursuant to Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case

contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

An initial inquiry is choice of law. Ohio law is appropriate. Although Defendant is located in Florida, Plaintiffs are located in Ohio, the contract was to be performed in Ohio, and the children were to be adopted in Ohio. *See Hagberg v. Delphi Auto. Sys.*, 268 F. Supp. 2d 855, 860 (N.D. Ohio. 2002) (court will determine if the cause of action is contractual or tort based and then determine which state has the most significant relationship). Although the parties did not brief whether Ohio law was controlling, only Ohio cases are cited in their respective briefs, and the Court will apply Ohio law to all claims.

### 1. Breach of Contract

Plaintiffs allege Defendant breached the contract because Defendant failed to properly coordinate the adoption process, and failed to accurately communicate with Plaintiffs and with adoption officials in India. Plaintiffs also allege Defendant breached its duty of good faith and fair dealing (Doc. No. 1, ¶¶ 11-12).

A breach of contract claim requires Plaintiffs to establish four essential elements: (1) the existence of a contract; (2) performance by Plaintiffs; (3) breach by Defendant; and (4) damage or loss to Plaintiffs. *See Doner v. Snapp*, 98 Ohio App. 3d 597, 600-601 (1994). The critical issue is whether there is a "breach by Defendant." Viewing the evidence most favorable to Plaintiffs shows no such breach.

Plaintiffs argue the Synopsis of Services and Fees[1] assigned specific duties to Defendant which Defendant breached, but the contract language does not support Plaintiffs' position. The Synopsis section of the contract lists Defendant's fees for the adoption process and includes a short description of items this fee may cover, including coordination with foreign officials and "with our [foreign] facilitator." The plain language of this section clearly placed Plaintiffs on notice that Defendant would be working with others in India to complete the adoption. This only makes sense. Further, the Agreement for Services, a separate section of the contract,[2] identifies those specific services that Defendant is required to perform, including locating the child, referring the child to the clients, and initiating contact with "the foreign orphanage and the affiliated agency." Again, the contract clearly contemplated Defendant would be working with other agencies in India, and Defendant's coordination with them was both expected and appropriate. Although the crux of Plaintiffs' claim is the out sourcing and lack of communication, Plaintiffs' deposition testimony centers on the fact the adoption

---

1

SYNOPSIS OF SERVICES AND FEES - INDIA, Section II. Schedule of Fees, Part A. ICIA Fee - $3750:

This is a comprehensive fee that covers our services. It includes assistance in the preparation of your dossier, locating an acceptable child for adoption; coordination of the adoption process in the foreign country; coordination with the applicable office of Immigration and Naturalization in this country; telephone, facsimile, and written communication with our facilitator in the applicable country, other officials in the applicable country, and with you, the client.

2

AGREEMENT FOR SERVICES, Section 4. Acknowledgment by the Client:

The clients make the following acknowledgments by executing this agreement:

a. That ICIA's sole responsibility with regard to the adoption contemplated by this agreement is to locate a child available for adoption in the applicable country acceptable to the clients; refer that child to the clients; initiate and coordinate contacts between the clients, the foreign orphanage and the affiliated agency; assist in dossier preparation; and receive and provide information and progress reports on the activities of the orphanage and affiliated agency.

b. That no agency exists between the orphanage or personnel thereof and/or the affiliated agency and ICIA.

c. That any failure of the orphanage in the foreign country or affiliated agency to complete the adoption in a timely manner is not the responsibility of ICIA; and if the clients believe they are entitled to a partial or full refund of the applicable country fee, the clients must look to the orphanage or the affiliated agency for such a refund.

was unsuccessful. However, the contract did not guarantee success, and Plaintiffs cite no other supporting legal authorities.

Finally, Plaintiffs argue Defendant did not act in good faith when coordinating and communicating with IFI because Defendant did not have first-hand knowledge of the specific tasks undertaken by IFI. Plaintiffs also argue Defendant did not act in good faith because IFI, not Defendant, was charged with coordinating the adoption process with Indian officials. In short, Plaintiffs seek to blame Defendant for the failings of IFI, but Defendant had no contractual duty to deal directly with Indian officials. Nor do Plaintiffs allege, let alone show, that Defendant is responsible for any failure of IFI. There was no contract prohibition to subcontract services to Indian agencies or that Plaintiffs pre-approve working with those agencies. Indeed, contract language summarized above contemplated quite the opposite.

Under Ohio law, "[g]ood faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St. 3d 433, 443-44 (1996) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357-58 (7th Cir. 1990)). In *Littlejohn*, the court held, "[a]ny agreement . . . has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract." *Littlejohn v. Parrish*, 163 Ohio App. 3d 456, 462 (2005); *Florence Urgent Care v. HealthSpan, Inc.*, 445 F. Supp. 2d 871, 879 (S.D. Ohio 2006).

Plaintiffs make no showing of lack of good faith. *See Reece v. Grange Guardian Ins. Co.*, 2004-Ohio-5668, at ¶ 31 (Ohio Ct. App. 2004) (summary judgment is appropriate if plaintiff fails to present evidence tending to show a lack of good faith on the part of the defendant). To the contrary,

the evidence shows Defendant performed the services required by the contract and continuously acted in good faith, providing Plaintiffs with numerous updates on the status of the adoption. Although Plaintiffs indicate "a plethora of factual evidence and arguments that [they] are eager to present to a jury" showing a lack of good faith, they offer no disputed material fact at this stage that would allow this case to proceed to a trial.

**2. Fraud**

Plaintiffs claim Defendant made repeated misrepresentations about the status of the adoption process and its relationship with IFI. A fraud claim requires Plaintiffs to establish: (1) a representation, or concealment where there is a duty to disclose; (2) which is material to the transaction at issue; (3) made falsely, with knowledge of or reckless disregard as to its falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance upon the misrepresentation or concealment; and (6) resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Comm'rs.*, 23 Ohio St. 3d 69, 69 (1986). Both parties agree Defendant sent several emails and made numerous phone calls to Plaintiffs (satisfying the first two elements of fraud), but Plaintiffs fail to show Defendant's statements were knowingly false or made with a reckless disregard to the truth or with the intent to mislead (the third and fourth elements).[3]

Fraudulent conduct may not be established by conjecture; it must be proved by direct evidence or justifiable inferences from established facts. *See Pumphrey v. Quillen*, 102 Ohio App. 173, 177 (1955). When a plaintiff fails to produce sufficient evidence from which a reasonable jury could find

[3] For the purpose of this Motion, the parties do not dispute that Plaintiffs relied, to their detriment, on the statements made by Defendant, which would satisfy the fifth and sixth elements.

defendant knowingly or recklessly made false statements, summary judgment is appropriate. *Doyle v. Fairchild Mach. Co.*, 120 Ohio App. 3d 192, 208 (1997).

Defendant methodically addresses every misrepresentation alleged in the Amended Complaint (Doc. No. 31), and reasserts that all statements made by Defendant were believed to be true. Plaintiffs incorrectly allege that because information passed along by Defendant turned out to be false, this may be sufficient to show Defendant acted knowingly or recklessly. To satisfy the third element of the fraud claim (knowledge of the falsity), Plaintiffs must prove not just falsity, but also actual knowledge or reckless behavior. Just because the statement is false does not necessarily mean Defendant knew or should have known it was false. For example, Defendant justifiably relied on statements made by IFI because of past dealings and successful adoptions. Defendant reasonably believed them to be true, even if they are eventually proven false.

Plaintiffs' circular analysis takes them nowhere. **Some** evidence of Defendant's knowledge or reckless behavior, beyond allegations that the statements were eventually proven false, is required to succeed on the fraud claim and Plaintiffs show **none**. The assertion they will "exercise their right to present . . . additional evidence at the appropriate time" rings hollow. Summary judgment is the appropriate time -- now -- to present this evidence in order to establish a genuine issue of material fact. Without such evidence, Plaintiffs have failed to establish at least two of the elements for their fraud claim, and summary judgment is appropriate.

**3. Intentional Infliction of Emotional Distress**

Plaintiffs next allege intentional infliction of emotional distress. To recover for intentional infliction of emotional distress in Ohio, a plaintiff must establish: (1) that the actor intended to cause emotional distress or knew or should have known that his actions would result in serious emotional

distress to the plaintiff; (2) that the conduct complained of has been so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) that the conduct proximately caused the plaintiff's injury; and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App. 3d 359, 366 (1990).

To be "extreme" and "outrageous," conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20 of Teamsters*, 6 Ohio St. 3d 369, 375 (1983); *see also Hillman v. Safeco Ins. Co. of Am.*, 190 F. Supp. 2d 1029, 1039 (N.D. Ohio 2002). The "extreme and outrageous" conduct identified by Plaintiffs is Defendant sending pictures of the children after Plaintiffs demanded that Defendant cease all contact. Defendant explains the reason the photographs were sent is because Defendant believed the contract was still valid and the terms required it to pass along status reports and information, including photos, to Plaintiffs. Although Defendant's conduct may have added, indeed aggravated, Plaintiffs' disappointment, this falls significantly short of going "beyond all bounds of decency" or being "utterly intolerable." *Yeager*, 6 Ohio St. 3d at 375. Plaintiffs submit no other evidence from which reasonable minds could conclude Defendant's conduct was either intended to cause harm, or was extreme or outrageous.

In addition, "[A] plaintiff claiming severe and debilitating emotional distress must present some 'guarantee of genuineness' in support of his or her claim to prevent summary judgment." *Powell v. Grant Med. Ctr.*, 148 Ohio App. 3d 1, 6 (2002) (citation omitted). Proof may be displayed through expert or lay witnesses acquainted with the plaintiff's emotional makeup and subsequent changes. *Id.* In the instant action, Plaintiffs' only evidence of emotional distress is Trisha Smith's

affidavit that "[a]lthough [she] never sought any medical help, [she] did suffer great emotional distress, stress, and suffering as a result of the Defendant's perpetual fraud" (Doc. No. 66, p. 22). Strikingly absent in Trisha Smith's affidavit is any mention of the photos causing great emotional distress. Furthermore, this lone sentence in the affidavit is factually insufficient to support a claim of mental anguish "of a nature that no reasonable person could be expected to endure." *Ashcroft*, 68 Ohio App. 3d at 366. Although a medical diagnosis is not required to show emotional distress, Plaintiff is required to show **some** evidence of severe and debilitating emotional distress. *See Gregg v. SBC/Ameritech*, Nos. 2:02-CV-980, 2:02-CV-1232, 2:03-CV-636, 2005 WL 1414114, at *23 (S.D. Ohio June 24, 2005) (granting summary judgment when the requisite facts, including evidence of sleeplessness and anxiety, do not rise to the level of severe and debilitating distress). Plaintiff's broad statement in her affidavit does not reach the threshold necessary for a reasonable jury to conclude Plaintiffs suffered severe emotional distress from the single mailing of photos.

## CONCLUSION

The Court recognizes that there is much heartache that can accompany an unsuccessful adoption. Plaintiffs' desire to be parents and raise children is clearly strong and commendable. However, there simply is no contract breach, fraud or intentional misconduct by Defendant who likewise wanted very much to bring these children in Plaintiffs' lives.

The facts, viewed in a light most favorable to Plaintiffs, fail to establish the necessary elements of the several claims and this Court finds no genuine issue as to any material fact. Therefore, Defendant is entitled to judgment as a matter of law, and its Motion for Summary Judgment is granted.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 27, 2008